[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was tried before the RFTD, on a referral from the Danbury Judicial District, on October 28, 2002. The Plaintiff and Defendant testified and numerous exhibits were introduced. The court has considered all of the credible evidence presented to it and carefully considered the respective criteria for orders of health insurance, payment of children's medical expenses, alimony, property settlement, division of debt and award of counsel and guardian ad litem fees for the minor children. The court makes the following findings of facts and orders:
The parties were married on October 5, 1990 in Schenectady, NY. The court finds that it has jurisdiction over the marriage. One of the parties has lived in the State of Connecticut for more than one year prior to bringing this action. The following minor children have been born to the parties since the date of the marriage:
Emily Van Buren; date of birth, August 18, 1991 Erin Van Buren; date of birth, November 8, 1994
No other minor children have been born to the Wife since the date of the marriage. The parties are not receiving state assistance. The court finds that the marriage between the parties has broken down irretrievably and there is no reasonable prospect of reconciliation.
The Wife is 42 years old and in excellent health. She received her B.S. in Finance from the College of St. Rose in Albany, NY. Ms. Van Buren has 16 graduate credits. Ms. Van Buren is currently employed sales analyst and works for Boehringer Ingelheim in Ridgebury, Connecticut. She earns gross income of $79,000 per year.
Mr. Van Buren is 38 years old and in good health. He received his bachelor's degree in communications and business in 1986 from SUNY Oneida. Mr. Van Buren's employment at the time of the marriage was as a hematopoietic Product Specialist/Hospital Territory Rep. for Ortho CT Page 287 Biotech, Inc. and Ortho Pharmaceutical Corporation and US Bioscience. He was briefly employed as an account executive for Physicians' Online, Inc. and ICE Integrated Communications and Entertainment. He has been self-employed since 1998 as a marketing representative for New Haven Consulting Group, Inc. New Haven Consulting Group, Inc. develops and provides training materials and services in the areas of management, sales, customer service, diversity, sexual harassment and compliance. The Defendant essentially sells the training programs and acts as a trainer for New Haven Consulting Group, Inc. (Plaintiff's Exhibits 20, 21, 26, 30 44)
Mr. Van Buren earned the following income since 1997:
$65,926 in 1997 (Plaintiff's Exhibit 1);
$24,847 in 1998 (Plaintiff's Exhibit 2);
$56,930 in 1999 (Plaintiff's Exhibit 3);
$237,813.00 in 2000 (Plaintiff's Exhibit 4); and
$88,407.00 in 2001 (Defendant's Exhibit H).
In 2001 the business expenses reported on his income tax return (Defendant's Exhibit H) were $34,414.00. The business expenses skyrocketed from the amounts reported in previous tax returns as follows:
$34,414 in 2001 ($13,278 of which was an automobile expense) (Defendant's Exhibit H);
$12,780 in 2000 ($10,072 of which was an automobile expense) (Plaintiff's Exhibit 4);
$14,921 in 1999 ($10,851 of which was an automobile expense) (Plaintiff's Exhibit 3),
$1,231 in 1998 (Plaintiff's Exhibit 2).
The Financial Affidavits, submitted by the Defendant during 2002, show income widely varying as follows:
$73,060.00 at the time of trial;
$103,607.40 in July 2002 (Plaintiff's Exhibit 46); CT Page 288
$136,225.44 in March 2002 (Plaintiff's Exhibit 37).
Additionally, Financial Affidavits, submitted by Mr. Van Buren in the year 2001, also show significant variance:
$114,244.00 in October 2001 (Plaintiff's Exhibit 8);
$136,225.44 in April 2001 (Plaintiff's Exhibit 5).
The Defendant has advertised himself in personal advertisements as earning $150,000 per year (Plaintiff's Exhibit 31). Mrs. Van Buren testified that her husband told her on a number of occasions that the earning potential of his present job was $200,000 to $400,000 per year. In reliance thereon she quit her job in 2000 and attempted to start her own company. She resumed her current full time employment when the divorce proceedings commenced.
Finally, the court heard a motion for contempt for failure to pay child support and daycare contributions on December 17, 2002. During the hearing, the Defendant indicated he had "begged" a client for the payment of an outstanding invoice of $6,000+. However, at the trial in October, Mr. Van Buren testified he had close to nothing in accounts receivable or billings for the remainder of 2002.
Given the facts above, the court does not find the Defendant's reporting of his income and business expenses credible. For purposes of computing the child support guidelines and the alimony award, the court is assigning an earning capacity of $110,000 to the defendant ($88,407.00 + ($34,414-$12,780)) = $110,041.00
The family home is a raised ranch located at 176 Middle River Road in Danbury, Connecticut. The couple purchased the home in 1992 for $178,000. The original mortgage was $165,000. The Wife claimed she used premarital savings in the approximate amount of $10,000 for the down payment. The Husband testified that he cashed in some savings bonds, purchased while employed at Johnson Johnson, for the down payment. Neither party offered any documentation to prove the payment. According to the Wife, there was no dispute that the fair market value of the home was $250,000, until the date of the trial. All of the parties' Financial Affidavits prior to trial reflect this figure. At trial the Husband testified that someone told him the home was worth $300,000 but he offered no written appraisal to verify the increase in value. The court does not find the Husband's testimony as to the increase in the value of the family home to be credible and, for purposes of the property CT Page 289 settlement, considered the value to be $250,000.
During the course of the proceedings the Husband removed $50,000 from his 401k to pay his taxes and several bills. This withdrawal was made in violation of the automatic orders and without notice to the Wife. In addition, the Husband liquidated Johnson and Johnson stock to pay his 2000 tax liability and used the remainder for the retainers of the Guardian Ad Litem and Attorney for the Minor Children. Again, the liquidation of the stock was in violation of the automatic orders and without the consent or knowledge of the Wife.
Mr. Van Buren claimed to have borrowed significant sums of money from his family but had no written documentation of the loans nor could he point out where he had deposited the money. The court does not find the allegations that this money was borrowed credible given the lack of documentation and the Defendant's inability to trace the money in his own bank account records.
 ORDERS
After considering all of the statutory criteria set forth in General Statutes § 46b-84 as to support of a minor child, § 46b-215a-1
et. seq., Regs. Conn. State Agencies, as to child support, § 46b-62
as to counsel fees, § 46b-66a as to conveyance of real property, § 46b-81 as to assignment of property and transfer of title, §46b-82 as to the award of alimony, § 46b-84 as to medical insurance for minor child, together with applicable case law and the evidence presented here, the court hereby enters the following orders:
1. DISSOLUTION OF MARRIAGE:
A decree dissolving the marriage, on the grounds of irretrievable breakdown, shall enter on January 8, 2003.
2. CHILD SUPPORT:
The Husband shall pay to the Wife the sum of $373.00 per week as child support for the two children, said sum being in compliance with the Child Support Guidelines. Said sum includes a $56.00 per week contribution towards daycare expenses. A contingent income withholding shall enter, as the Husband is currently self employed.
The obligations of support and maintenance of the minor children shall terminate as each such child attains the age of eighteen (18) years, marries, dies, becomes employed full time being no longer enrolled in CT Page 290 high school, or ceases to reside with the Wife under circumstances where the Wife is no longer furnishing the child's support or becomes otherwise emancipated, whichever occurs first.
Notwithstanding that a child has reached the age of eighteen (18) years, if the child is a full time high school student and continues to reside with the Wife, the Husband shall continue to pay child support as specified above, until the child completes the twelfth (12) grade or attains the age of nineteen (19) years, whichever occurs first.
3. ALIMONY:
The Husband shall pay to the Wife alimony of $125.00 per week for a period of six (6) years from the date of the dissolution, non-modifiable as to term unless the Wife dies, remarries, or cohabitates as defined by statute.
4. LIFE INSURANCE:
The Husband shall continue to maintain his current life insurance with Northwestern Mutual in the amount of $500,000.00, with the Wife as the beneficiary for as long as he is obligated to pay child support and alimony. The Husband shall provide to the Wife proof of said insurance on an annual basis.
The Wife shall continue to maintain her current life insurance with Northwestern Mutual in the amount of $200,000.00 with the minor children as the beneficiaries until they have reached the age of 23 years. The Wife shall provide to the Husband proof of said insurance on an annual basis.
5. PENSIONS, IRA ACCOUNTS, 401K ACCOUNTS AND DEFERRED COMPENSATIONACCOUNTS:
The parties shall equally divide all pensions, IRA accounts, 401K accounts and deferred compensation accounts as listed on their respective financial affidavits by means of a Qualified Domestic Relations Order, if needed. The parties shall equally share the cost of preparing the necessary documents. The division of the retirement accounts shall be completed within 45 days of the date of judgment. Each party shall be awarded joint and survivorship benefits to protect each party in the event of the other's death.
6. REAL PROPERTY:
CT Page 291
The parties jointly own the following real property: 176 Middle River Road, Danbury, Connecticut, with a value of $250,000.00, a mortgage of $153,777.95 and equity of $96,222.05.
Said real estate shall be disposed of as follows:
a. The Husband shall Quit Claim all of his right title and interest in and to the property to the Wife. The Wife shall hold the Husband indemnified and harmless from the mortgage, taxes, utilities and homeowners insurance.
b. The Wife shall sign a note and mortgage to the Husband in the principal amount of Forty-eight Thousand, one hundred and eleven ($48,111.00) dollars bearing simple interest at the rate of three (3%) percent per annum. Said note shall become due and payable on the first to occur of: 1) The Wife's remarriage; 2) The Wife's death; 3) The youngest child reaching age 19 or graduation from high school; 4) The Wife's voluntary sale of the home or 5) The Wife's cohabitation pursuant to Connecticut General Statue § 46b-86 (b).
7. DIVISION OF DEBTS:
Except as otherwise provided herein, the Husband shall be responsible for the debts on his financial affidavit and the Wife shall be responsible for the debts on her financial affidavit.
8. MEDICAL INSURANCE AND UNREIMBURSED MEDICALS — CHILDREN:
The Wife shall maintain, at her sole expense, the present medical/dental insurance for the children, which is provided to the Wife through her employment. If said insurance is no longer available to the Wife through her employment at a reasonable cost, the parties shall equally share the cost of obtaining such medical and dental insurance. The Wife shall be responsible for the first $100.00 per year of unreimbursed medical and dental expenses. Thereafter, the parties shall split the cost of any unreimbursed medical, dental, optical, psychological, orthodontic and prescriptive drug expenses incurred on behalf of the minor children according to the Guidelines (the Wife's share being 57% and the Husband's share being 43%) for as long as the Husband is obligated to pay child support for said child. The provisions of 46b-84 (e) shall apply.
9. MEDICAL INSURANCE — WIFE AND HUSBAND:
The Wife shall be responsible for her own medical insurance coverage. The Husband shall be responsible for his own medical insurance. The Wife CT Page 292 shall cooperate with the Husband in obtaining any COBRA benefits available to him through her employer.
10. CUSTODY AND VISITATION:
The court finds that the agreement of the parties dated May 29, 2002, regarding custody and visitation is in the best interest of the minor children and it is incorporated herein by reference. The court shall retain jurisdiction over this matter for the next year to monitor progress of the parenting plan and maintain continuity of the court orders regarding custody and visitation.
11. INCOME TAX EXEMPTION:
The Husband shall take both children as dependents for income tax purposes every year for as long as his child support and unreimbursed medical expense payments are current.
12. JOINT AMERITRADE NET/BANK ACCOUNT:
The parties shall equally divide the balance of the joint Ameritrade account as of the date of judgment. The transfer shall take place within 30 days of the date of judgment.
13. PERSONAL PROPERTY:
If the parties are unable to agree on the division of their personal property from the marital home, they shall submit to mediation by Family Relations.
14. EDUCATIONAL SUPPORT:
Pursuant to Public Act #02-128, An Act Concerning Educational Support, and the parties' failure to waive their right to request educational support for their minor children, the court shall retain jurisdiction over the parents' contribution towards the payment of the children's higher education.
15. MOTOR VEHICLES:
The parties shall be entitled to their respective motor vehicles and shall hold the other harmless and indemnified from all outstanding loans, personal property taxes and registration. If it is necessary to transfer title and/or registration to either or both of the vehicles, the parties shall complete the necessary paperwork within 30 days of the date CT Page 293 of judgment.
16. ATTORNEY FEES:
The parties shall each be solely responsible for their own attorney fees. The parties shall equally share the cost of the fees for the attorney for the minor children and guardian ad litem. The fees for the attorney for the minor children and guardian ad litem shall be paid in full within 45 days of the date of judgment.
17. INTERIM POST JUDGMENT ORDERS:
These orders shall be considered interim post judgment orders in the event of an appeal by either party.
18. JURISDICTION:
The Regional Family Trial Docket shall retain jurisdiction over this case for a period of one year from the date of judgment; any motions regarding custody and/or visitation shall be filed with the Regional Family Trial Docket.
By the Court,
Holly Abery-Wetstone, Presiding Judge CT Page 294